NYGAARD, Circuit Judge,
dissenting:
I disagree with my colleagues that we should be controlled in how'we interpret § 881(a)(4)(C) by United States v. 6109 Grubb Road, 886 F.2d 618, 623-26 (3d Cir.1989), and the conclusion they reach: that a purchaser of property, forfeitable in the seller’s hands, need only show either a lack of knowledge or a lack of consent to raise an “innocent owner” defense under § 881(a)(7), and thereby shield the property from forfeiture.
Indeed, the majority’s holding completely nullifies the “willful blindness” provision of that section, because a purchaser who is ignorant of a property’s illicit use, whether willfully or innocently, can logically neither grant nor deny consent to how his predecessor used it. Moreover, one can neither deny nor give consent to the use of property unless one has either ownership or control, or for that matter, some legally cognizable interest in it. Hence, applying Grubb to willfully blind, post-illegal act transferees will create a virtual windfall for them, because they cannot lose. Following the majority’s conclusion, one such as Goodman may purchase a mobster’s car, knowing it to have been used to facilitate drag trafficking, with full confidence that it is shielded from forfeiture because he did not give the mobster his consent to use the property illicitly.
The majority reaches its conclusion because it is unable to reconcile the district court’s holding with Grubb, involving § 881(a)(7), and United States v. 92 Buena Vista, — U.S. -, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993), which interpreted §§ 881(a)(6) and (h). In reversing the district court, which held that Grubb does not apply to forfeitures under § 881(a)(4)(C), the majority concludes that under Grubb Goodman could invoke the innocent owner defense if he did not consent to his predecessor-in-title’s use of the Rolls Royce to facilitate illegal drug transactions; this despite willfully blinding himself to that very fact.
*821 I simply do not believe that Grubb even applies to post-illegal-aet property purchasers who are aware of or willfully blind to their property’s past use in facilitating illegal drug transactions. Neither Grubb nor Bue-na Vista applies to post-illegal-act transferees and neither interprets § 881(a)(4)(C). The “willful blindness” language unique to § (a)(4)(C) requires us to interpret the innocent owner defense of that section differently from subsections that do not contain the willful blindness language; for example §§ (a)(6) & (7). I would disallow knowing or willfully blind purchasers of otherwise forfei-table property from invoking the innocent owner defense, and not expansively apply Grubb to these facts when it clearly is not warranted.
I also reject the majority’s resignation that only Congress can cure this difficulty. This, I fear, is more an act of judicial abdication than judicial restraint. I believe we are obligated to make sense of the statute and avoid a result that contradicts its purpose. It may be true, as my colleagues suggest, that the problem should be remedied by Congress. I suggest, however, that we cannot hide so easily. We are obligated to construe the statute to avoid absurd results if alternative interpretations are available, plausible and consistent with its purpose. United States v. Schneider, 14 F.3d 876, 879-80 (3d Cir.1994) (citing Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)).
In sum, according to my colleagues’ “straightforward” conclusion, condensed at page 800, of their Opinion, in Goodman’s case he need only show that he did not consent to the Rolls Royce’s illicit use, and is then entitled to innocent owner status. I believe, however, their analysis contravenes both logic and Congress’ very purpose in promulgating § 881, that is, to curb illegal drug activity. I must respectfully dissent.
I.
First, however, I conclude that the district court applied the correct standard in assessing whether Goodman was willfully blind within the meaning of § 881(a)(4)(C). The test employed by the district court was not a negligent or an objective due care standard, nor was it inconsistent with our precedent defining willful blindness. With no case of this court directly on point, the district court developed its own standard:
Lack of willful blindness sufficient to prevail as an innocent owner under § 881(a)(4)C) means that a claimant must show that he or she has not ignored a signal or suggestion that a vehicle might have been used to facilitate the trafficking of illegal drugs.... [0]nce the claimant chooses to ignore the signal, he or she can no longer establish lack of willful blindness to the prior use of the vehicle that would subject it to forfeiture.
I would conclude that the district court’s standard for establishing willful blindness is consistent with United States v. Caminos, 770 F.2d 361, 365 (3d Cir.1985), in which we said that a “deliberate ignoranee” jury charge “[m]ust make clear that the defendant himself was subjectively aware of the high probability of fact in question, and not merely that a reasonable man would have been aware of the probability.”
Ultimately, the district court made a subjective inquiry into Goodman’s state of mind when it found that he ignored rather obvious signals or suggestions that the Rolls Royce was legally infected and subject to forfeiture when he acquired it. As the district court found, Goodman knew of Scarfo’s illegal activities. Moreover, that he had countersur-veillance equipment removed from the vehicle further suggests that he was continually aware that it was legally tainted after the transfer. On this basis, the trial judge made a clear credibility determination against Goodman’s claim, “that he had absolutely no indication [that] the Rolls Royce was ever utilized to facilitate drug trafficking,” and found his testimony to be incredible. I conclude the district court employed a subjective standard and found that Goodman was willfully blind, to which we must defer in the absence of clear error. I would affirm both the district court standard and its subjective assessment that Goodman was willfully blind.
II.
Second, Grubb held, in the context of '§ 881(a)(7), another drug forfeiture subsec *822 tion, that an owner who knows a vehicle is legally contaminated will still be considered an innocent owner upon showing that he or she did not consent to its drug-trafficking use. From similarities between § 881(a)(4)(C) and other drug forfeiture subsections, particularly §§ 881(a)(6) and (a)(7), and because we rendered a disjunctive reading of § 881(a)(7) in 6109 Grubb Road, the majority concludes that § 881(a)(4)(C) should also be read disjunctively.
Section 881(a)(4)(C), however, contains the willful blindness language found in neither §§ 881(a)(6) nor (a)(7), civil forfeiture subsections which only provide for an innocent owner defense when there is a lack of knowledge or a lack of consent. Moreover, the legislative history establishes that § 881(a)(4)(C)’s willful blindness language is not mere sur-plusage and should not be treated as such.
If we apply Grubb to forfeitures under § 881(a)(4)(C) involving willfully blind, post-illegal act transferees, we wholly disregard §. 881(a)(4)(C)’s willful blindness language and Congress’ intent to prevent willfully blind owners from invoking the innocent owner defense. If a claimant fails to prove lack of willful blindness, but can alternatively prevail by satisfying the sure-winner defense for a non-owner — lack of consent — then the willful blindness language becomes utterly nullified.
A disjunctive reading of § 881(a)(4)(C)’s “knowledge, consent or willful blindness” brings the language into direct conflict with itself, thus producing an absurd result with respect to willfully blind subsequent owners. Nevertheless, the majority, applying Grubb, holds that Goodman should be allowed to prove his innocent ownership based on lack of consent. Since consent involves an owner’s acquiescence to the property’s use in drug trafficking, Goodman, as a subsequent owner or transferee, will always be able to show a lack of consent if he had no legal interest in or control of the Rolls Royce when it was used to facilitate the drug transaction.
As a result, any finding that Goodman was willfully blind to the vehicle’s taint when he received it is useless, because if “blind,” whether willfully or ignorantly, he did not know and could not give or deny his consent, even if he was somehow authorized or empowered to do so. In other words, willful blindness conceptually presupposes the absence of knowledge and consent. When an owner fails to prove that his lack of knowledge is not the result of willful blindness, the less stringent standards for proving lack of knowledge and lack of consent are then irrelevant.
The premise of Grubb is that the language of § 881(a)(7) (no property shall be forfeited “by any reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner”) should be read disjunctively because of Congress’ use of the traditionally disjunctive word “or.” According to Grubb’s analysis of § .881(a)(7), Congress’ use of the .word “or” implies that each provision to which it refers should be given independent weight. Yet, by a disjunctive reading of § 881(a)(4)(C), a subsequent owner who avoids investigating an obvious possibility that his or her property is forfeitable in the hands of the transferor, will always be able to establish innocent owner status because of his or her lack of consent. In sum, a disjunctive interpretation of § 881(a)(4)(C) is tantamount to ignoring the willful blindness language of that subsection. I do not read it that way.
The district court also remedied this problem by refusing to apply Grubb to eases involving willfully blind, post-illegal act transferees. The district court differentiated between owners who use their property to facilitate drug trafficking, where application of Grubb would make sense, and willfully blind post-illegal-act transferees, where its application would not. I would too. The import of this differentiation is that we should not blindly read the “or” in § 881(a)(4)(C) dis-junctively, but rather, should examine the context in which “or” is used, because in some circumstances “or” does not apply or should be read as “and.” Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979) (terms connected by a disjunctive word must be given their separate meanings unless the context dictates otherwise); see also United States v. Smeathers, 884 F.2d 363, 364 (8th Cir.1989) (citing United States v. Moore, 613 F.2d 1029, 1040 (D.C.Cir.1979)) (the word “or” connotes disjunctive except when a disjunctive reading would frustrate legislative intent).
*823 Finally, Buena Vista does not create doubt that post-illegal act transferees, aware of a property’s taint at the time of its conveyance or thereafter, should benefit from the forfeiture statutes’ innocent owner defenses. Section 881 codifies the common law relation back doctrine, as defined by the Supreme Court in United States v. Stowell, 133 U.S. 1, 15-16, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1889), which prevents the possibility of a post-illegal act transferee invoking the innocent owner defense, because title to a defendant’s property vests in the government at the time the drug crime occurs.
In Buena Vista, the Supreme Court purposely did not address whether post-illegal act transferees could invoke the innocent owner defense because in that case the “respondent ... assumed the burden of convincing the trier of fact that she had no knowledge of the alleged source of [the property].” Buena Vista, — U.S. at -, 113 S.Ct. at 1137. Hence, consideration of whether post-illegal act transferees, who are aware of a property’s taint only at the time of conveyance or thereafter, was not central to the Court’s analysis. The Court did, however, address the issue in dictum, but then leaned away from the majority position here. It stated that equitable doctrines may foreclose the assertion of the innocent owner defense by a post-illegal act transferee “with guilty knowledge of the tainted character of a property.” Id.
In sum, given the legislative history of § 881(a)(4)(C)’s willful blindness language and Buena Vista s instructional dictum about foreclosing the innocent owner defense for willfully blind subsequent owners and transferees, the district court did not err by concluding that Grubb does not apply to purchasers of forfeitable property. Section 881(a)(4)(C)’s “knowledge, consent or willful blindness” language requires a conjunctive reading to prevent conflict among the provisions, because consent to the vehicle’s use in drug activity is irrelevant if one is a willfully blind post-illegal act transferee. Then too, given the district court’s finding of willful blindness alone, Goodman was precluded from making an innocent owner defense under that subsection’s other provisions. I conclude that the subject vehicle was properly forfeited and so, dissent.